IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JACK HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3017 |
| | ) | |
| v. | ) | |
| | ) | |
| DARCY OLIVER, caseworker Nebraska penitentiary, each defendant is sued individually and in his or her official capacity at all times mentioned in this complaint each defendant acted under the color of state law, and DOUG DILTZ, Captain, Nebraska penitentiary, each defendant is sued individually and in his or her official capacity at all times mentioned in this complaint each defendant acted under the color of state law, | ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANT DILTZ'S MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |

      On January 30, 2006, the plaintiff, Jack Harris, filed a complaint against Defendants Darcy Oliver and Doug Diltz individually and in their official capacities as employees of the Nebraska State Penitentiary (NSP). (See generally Compl., filing 1, at 1-2.) Defendant Diltz has filed a motion for summary judgment on the plaintiff's "individual capacity" claims against him. (See filing 23.) For the following reasons, I find that the defendant's motion must be granted in part.

1

## I.   BACKGROUND[1]

The plaintiff is an inmate who resides in the custody of the Nebraska Department of Correctional Services.  (See generally Compl., filing 1.)  At all relevant times, the plaintiff was incarcerated at NSP, and Diltz was employed as a captain at NSP.  (See Def.'s Br., filing 24, at 1 ¶¶ 2-3.)[2]  Oliver was employed as a caseworker at NSP.  (See Compl., filing 1, at 1.)

The plaintiff's complaint alleges that Oliver pressured the plaintiff into performing sexual acts with her and paid him "to keep what happen[ed] a secret."  (See Compl., filing 1, at "page 5 of 44.")  Oliver's sexual contact with the plaintiff began on either June 5, 2004, or September 12, 2004, and continued until the plaintiff disclosed the contact to Diltz on January 19, 2005.  (See Compl., filing 1, at "page 5 of 44"; Def.'s Index, filing 25, Exs. 3, 4.)  Oliver was arrested on or about January 20, 2005, and she was charged with "sexual abuse-inmate/parolee-1st degree" and "unlawful acts by corrections employee."  (See Compl., filing 1, Exs. 2, 11.)

The circumstances surrounding the disclosure of Oliver's contact with the plaintiff are described in a "Disciplinary Misconduct Reporting Form" that was filed by Diltz on January 20, 2005.  (See Def.'s Index, filing 25, Ex. 4 at 1.)  Diltz's report states that on January 19, 2005, a confidential informant told Diltz that the plaintiff had threatened her, the confidential informant.  (See id.)  The informant also told Diltz that she, the confidential informant, sent money to the plaintiff on several occasions.  (See id.)  When confronted with these allegations, the plaintiff denied threatening the informant, but admitted that the informant had been sending him money.  (See id.)  He also "admit[ted] to having a sexual relationship with the confidential informant."  (See id. at 2.)  Although the report identifies the confidential informant only as "an employee

---

[1]Defendant Diltz's motion for summary judgment is accompanied by a statement of material facts.  (See filing 24 at 1-2.)  I note, however, that certain paragraphs of the defendant's statement of facts lack "citations to the exact locations in the record supporting the factual allegations," so not in accordance with Nebraska Civil Rule 56.1(a)(2).  Additionally, it appears that the defendant's index of evidence is not accompanied by the requisite affidavit.  See NECivR 7.1(a)(2)(C).  The defendant is urged to study this court's local rules and ensure that all future filings comply with the rules' requirements.

[2]These facts are not accompanied by references to the record; however, because the plaintiff does not dispute them, they will be taken as true for the purposes of this memorandum.

with the Department of Corrections," there appears to be no dispute that the confidential informant was Oliver. Based on the foregoing information, Diltz determined that the plaintiff violated the institutional rule prohibiting "sexual activities," among other rules. (See id. at 1.)[3] He placed the plaintiff in "I.S.O.," or "the hole," and an investigation commenced. (Compl., filing 1, at "page 7 of 44.") See also 68 Neb. Admin. Code ch. 6, § 006.02 (2006) ("Inmates charged with a rule violation may be held in immediate segregation status.").

According to an "Institutional Disciplinary Committee Action Sheet" dated January 31, 2005, the plaintiff was charged with "Bribery," "Sex Acts," "Threatening Language," "Swearing, Cursing," "Disruption," and "Violation of Regs." (Def.'s Index, filing 25, Ex. 5.) The disciplinary committee found the plaintiff guilty of "Sex Acts," imposed thirty days of disciplinary segregation on the plaintiff, and dismissed the remaining charges. (See id.)

It appears that the plaintiff's disciplinary segregation was scheduled to run from January 20, 2005, through February 18, 2005. (See Def.'s Index, filing 25, Ex. 5.) However, on or about February 17, 2005, prison officials determined that the plaintiff should remain on "Administrative Confinement Status" for an additional ninety days. (See Def.'s Index, filing 25, Exs. 1, 2.) More specifically, the Classification Notes state,

> Due to the seriousness of the incident which led to your placement in Segregation (threatening staff), the unit team recommend[s] inmate Harris be placed on Administrative Confinement Status with a review in ninety (90) days.

(See Def.'s Index, filing 25, Ex. 1.)

On March 17, 2005, the Nebraska Department of Correctional Services Appeals Board reversed the decision of the disciplinary committee, stating, "The Board has reviewed the record and there is insufficient evidence to find that inmate Harris voluntarily violated Rule 5-II-C [Sexual Activities]." (Compl., filing 1, Ex. 8 at 1.) It is not clear, however, whether the plaintiff was released from Administrative Confinement Status upon the reversal of the disciplinary committee's decision. On the contrary, a document attached to the plaintiff's complaint suggests that the plaintiff continued on Administrative Confinement Status through at least June 13, 2005.

---

[3]Parts of the Disciplinary Misconduct Reporting Form have been redacted. The legible portion of the form suggests that the "sexual activities" infraction is the second of several infractions cited by Diltz.

(See Compl., filing 1, Ex. 9.)

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

Diltz argues that he is entitled to summary judgment because, to the extent that he is sued in his individual capacity, he is entitled to qualified immunity. (See generally filing 24.)

> Qualified immunity protects a governmental official from suit when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."[] To determine whether an official is entitled to qualified immunity, we apply a two-part inquiry: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, . . . whether that right was clearly established at the time of the alleged violation." When applying this inquiry at the summary judgment stage, the official's conduct must be viewed through the prism of Rule 56–that is, we must take as true those facts asserted by plaintiff that are properly supported in the record. Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law.

4

Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001) (citations omitted).

### III.   ANALYSIS

The complaint, which is brought pursuant to 42 U.S.C. § 1983, alleges that Diltz violated the plaintiff's due process rights by placing him in administrative confinement without following the proper procedures. (See Compl., filing 1, "page 9 of 14.") The complaint has also been interpreted to allege a retaliation claim. (See Order on Initial Review, filing 6, at 1-2.) Diltz has moved for summary judgment on each of these claims, (see filing 24 at 4-10), and I shall consider his arguments in turn.[4]

#### A.   Due Process

Diltz argues first that he is entitled to qualified immunity insofar as the complaint alleges a violation of the plaintiff's due process rights. (See filing 24 at 4-8.) Procedural due process claims are reviewed in two steps. Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). "The first question is whether [the plaintiff] has been deprived of a protected liberty or property interest." Id. (citation omitted). "Protected liberty interests 'may arise from two sources-the Due Process Clause itself and the laws of the States.'" Id. (quoting Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). If it is determined that the plaintiff does have a protected interest, the court must then "consider what process is due by balancing the specific interest that was affected, the likelihood that the [institution's] procedures would result in an erroneous deprivation, and the [institution's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 332-335 (1976)). Diltz argues that the plaintiff cannot establish the first step of a procedural due process claim (i.e., that his placement in immediate segregation, disciplinary segregation, or Administrative Confinement violated a protected liberty interest), and therefore he cannot clear the first part of the qualified immunity inquiry (i.e., he cannot establish

---

[4] I note in passing that the complaint also alleges that Diltz violated the plaintiff's Eighth Amendment and equal protection rights by sending him to "the hole" while other inmates who engaged in sexual relationships with corrections officers were not so punished. (See id. at "page 7 of 44," "page 10 of 44.") Since the defendant's motion does not address these claims, they will not be addressed in this memorandum.

5

that there was a constitutional violation). (See filing 24 at 6-7.) I agree.

"[P]risoners do not shed all constitutional rights at the prison gate . . . but '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Sandin v. Conner, 515 U.S. 472, 485 (1995) (citations omitted). If a restraint on a prisoner's liberty "does not present a dramatic departure from the basic conditions" of an inmate's sentence, the restraint will not implicate a protected liberty interest. Id. In short, "[a]n inmate who makes a due process challenge to his segregated confinement 'must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship."'" Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) (quoting Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000)). The plaintiff has made no such showing in this case. I note in passing that although the record suggests that the plaintiff spent approximately 145 days in some form of segregated confinement, the Eighth Circuit has suggested that such evidence, standing alone, is insufficient to establish an "atypical and significant hardship." See Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (citing cases); Hemphill v. Delo, No. 95-3357, 1997 WL 581079, at *2 (8th Cir. 1997) ("Here, Hemphill has not alleged more than that he spent four days locked in his housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation. We conclude that, without alleging more, this period of time does not constitute an 'atypical and significant hardship' when compared to the burdens of ordinary prison life."); Driscoll v. Youngman, No. 95-4037, 1997 WL 581072, at *2 (8th Cir. 1997) ("[A] total of 135 days in disciplinary and administrative segregation did not alone constitute an 'atypical and significant hardship' when compared to the 'ordinary incidents of prison life.'" (citations omitted)).

The plaintiff has failed to establish that there is a genuine issue whether his placement in immediate segregation and his subsequent terms of disciplinary and administrative confinement violated a protected liberty interest, and since the plaintiff has not established that there has been a constitutional violation, I find that Diltz is entitled to qualified immunity from the plaintiff's due process claim.

### B. Retaliation

Diltz argues next that the plaintiff "was placed in administrative confinement for

6

justifiable reasons." (See filing 24 at 8-9.) To the extent that Diltz claims that he is therefore entitled to summary judgment on the plaintiff's retaliation claim, I am not persuaded.[5]

The Eighth Circuit has "long recognized an inmate's cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for the inmate's exercise of his constitutional rights." Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989)). Diltz has not argued that the plaintiff cannot establish that he exercised a constitutionally protected right. Nor has Diltz argued that the plaintiff cannot establish that his exercise of that right motivated a prison official to discipline him. Instead, Diltz argues that "[t]he decision to place [the plaintiff] in Administrative Confinement was based on a number of factors," specifically, his "imminent threat potential to staff and/or inmates; [the plaintiff's] behavior leading to his placement on Disciplinary Segregation Status; and . . . [the plaintiff's] documented behavior and interactions with staff and other inmates, just to mention a few." (Filing 24 at 9 (citing Def.'s Index, filing 25, Ex. 2 at 2).) The evidence cited by Diltz does suggest that these factors were considered "when deciding to classify [the plaintiff] to Administrative Segregation"; however, it does not establish whether any of these factors weighed in favor of the decision to place the plaintiff in Administrative Segregation (or Administrative Confinement Status, if there is a difference). (See Def.'s Index, filing 25, Ex. 2 at 2.) On the contrary, the Reclassification Action Form states only that the plaintiff was placed on Administrative Confinement Status "[d]ue to the seriousness of the incident which led to [the plaintiff's] placement in segregation (threatening staff)." (Id. at 1.) Other documents in the record indicate that the "Threatening Language" charge against the plaintiff was dismissed well before his placement in Administrative Confinement Status; that the plaintiff was found guilty only of "Sex Acts"; and that the "Sex Acts" violation was ultimately reversed by the Appeals Board on the ground that there was "insufficient evidence to find that [the plaintiff] intentionally violated" the rule prohibiting sex acts. (See Def.'s Index, filing 25,

---

[5]I note parenthetically that Diltz's argument centers around the placement of the plaintiff on Administrative Confinement Status. (See filing 24 at 8-10.) The defendant has not argued that the misconduct report filed by Diltz, the placement of the plaintiff in immediate segregation, or the imposition of thirty days of disciplinary segregation upon the plaintiff were not retaliatory.

7

Ex. 5; Compl., filing 1, Ex. 8.) Although the defendant claims that the Appeals Board finding does not truly mean that the plaintiff "did not voluntarily engage in sexual activities with Oliver," (see filing 24 at 9 (citing Compl., filing 1, at "pages 32-33")), it seems to me that there is a genuine issue whether the placement of the plaintiff on Administrative Confinement Status was retaliatory.

**IT IS ORDERED** that the Defendant Diltz's Motion for Summary Judgment, filing 23, is granted as to the plaintiff's due process claim, and is otherwise denied.

Dated March 21, 2007.

>BY THE COURT
>
>s/ Warren K. Urbom
>United States Senior District Judge